FREDERICK R. MOORE *vs.* CIVIL SERVICE COMMISSION.

Middlesex.    May 5, December 5, 1955. — January 5, 1956.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Civil Service.*

The civil service commission, upon an appeal to it under G.L. (Ter. Ed.)
    c. 31, § 2 (b), as appearing in St. 1945, c. 725, § 1, by competitors in a
    competitive examination from a decision by the director refusing to dis-
    turb the results of the examination, had power to set aside the ex-
    amination without giving notice or an opportunity to be heard to the
    competitor who had received the highest grade and who was not an
    appellant.

PETITION, filed in the Superior Court on January 26, 1955, for a writ of certiorari.

The case was reported by *Morton, J.*, after overruling a demurrer.

*Hugh Morton,* Assistant Attorney General, for the respondent.

*Richard S. McCabe,* for the petitioner.

SPALDING, J.   The material averments in this petition for a writ of certiorari are these.   The petitioner for many years has been employed as an instructor in the textile shop of the Massachusetts Reformatory, a position within the classified civil service of the Commonwealth.   On May 8, 1954, he, with seven others, took a competitive promotional examination for the position of assistant industrial shop manager of the reformatory.   On July 7, 1954, the petitioner was notified that he had received a grade of 86.24 and he was "informed and believes that this was the highest grade received" by any person taking the examination. After the grades had been recorded some or all of the other competitors appealed to the director of civil service who, after hearing, denied their appeal and refused to set aside the results of the examination.   From this decision the aggrieved competitors appealed to the civil service commission.   The commission held a hearing on this appeal, but no notice thereof was given to the petitioner and he was given no opportunity to be heard, although as a candidate who had received the highest grade he was an interested party.   After hearing, the commission voted to cancel the examination and to hold another.   By letter dated December 30, 1954, the commission notified the petitioner that it had cancelled the examination "in view of the evidence presented to . . . [it]."   Alleging that the action of the commission was unauthorized, the petitioner asked that it be quashed.

The commission demurred on the ground that the petition set forth no ground for relief, since the commission acted within its powers in cancelling the examination.   The demurrer was overruled, and the judge, being of opinion that the question of law raised by the demurrer ought to be determined by this court before further proceedings, re-

ported the case. G. L. (Ter. Ed.) c. 213, § 1B, inserted by St. 1939, c. 257, § 1, and c. 231, § 111. *Berube* v. *Selectmen of Edgartown,* 331 Mass. 72, 73.

In deciding the question presented it becomes necessary to set forth the pertinent statutes at some length. By St. 1939, c. 238, which made important changes in the statutes relating to civil service, a department of civil service and registration was provided for consisting of a division of civil service and a division of registration. See now G. L. (Ter. Ed.) c. 13, § 1, as amended. Section 2 of c. 13 provides in part, "The division of civil service shall be under the supervision and control of a director of civil service, who shall be the executive and administrative head of the division, and a commission, to be known as the civil service commission, consisting of five members . . . . The director of civil service shall be appointed by the commission. He shall be a person familiar with the principles and experienced in the methods and practice of personnel administration. . . ." (See St. 1945, c. 681, § 1.)

Chapter 31, § 2, as appearing in St. 1945, c. 725, § 1, sets out certain duties of the commission, one of which is that it shall "(b) Hear and decide all appeals from any decision or action of, or failure to act by, the director, upon application of a person aggrieved thereby; provided, that no decision or action of the director shall be reversed or modified or action be taken, in case of failure of the director to act, except by three affirmative votes of the commission, and in each case the specific reasons therefor shall be stated in the records of the proceedings of the commission. . . . [No] decision of the director relating to an examination mark shall be reversed and no such mark changed unless the commission finds that it was through error, fraud, mistake or in bad faith, and in each case of reversal of such decision or change in marking the specific reasons therefor shall be stated in the records of the proceedings of the commission."

Section 2A, as appearing in St. 1945, c. 725, § 2, which defines the duties of the director, provides that he shall

"(e) . . . hold examinations for the purpose of establishing eligible lists of persons for appointment or promotion to positions in the official service of the commonwealth . . . ." And § 10, as appearing in St. 1939, c. 498, § 2, as amended, provides that "Examinations shall be conducted under the direction of the director, who shall determine the form, method and subject matter thereof; provided, that they shall relate to matters which will fairly test the fitness of the applicants actually to perform the duties of the positions for which they apply. . . . The director shall determine the scope and weight of examinations."

The foregoing provisions relating to the organization and operation of the division of civil service were adopted as a result of investigations and recommendations made by special commissions created by c. 41 of the Resolves of 1937 and by c. 82 of the Resolves of 1938. The commissions took the view that the civil service system would be more effective and less subject to abuse if the administrative functions were separated from those of a legislative or quasi judicial nature.[1] Accordingly, they recommended the establishment of the position of director of civil service within the division of civil service to handle all administrative and technical matters and the limiting of the authority of the commission to such duties as making rules, determining policies, and hearing appeals.[2]

From a reading of the statutes subsequently adopted it is apparent that in matters of organization and in the distribution of responsibilities in the division the Legislature adopted in substance the recommendations of the special commissions. The director, who is appointed by the commission, must be a "person familiar with the principles and experienced in the methods and practice of personnel

---

[1] House Nos. 1715 (April 11, 1938), 1716 (April 13, 1938), and 1722 (January 13, 1939).

[2] Theretofore a commissioner of civil service was the executive and administrative head of the division and he and two associate commissioners were given the supervision and control of the division. G. L. (Ter. Ed.) c. 13, §§ 1, 2.

administration." This relieves the civil service commission of a substantial amount of detail and leaves it free to formulate policy and to perform quasi legislative and quasi judicial functions. Duties of an administrative and technical nature are to be performed by one skilled in the field,[1] the director.

One of the subjects with which the special commissions and the Legislature were especially concerned was that relating to examinations. It is apparent from the recommendations of the commissions and the statutes set forth above that the making up and grading of examinations were to be primarily administrative functions to be performed by the director and that the appellate jurisdiction of the commission relating to examination marks was to be more restricted than it was in other matters. Thus by § 2 (b) the commission was empowered to "Hear and decide all appeals from any decision or action of, or failure to act by, the director." But that same section goes on to provide that "no decision of the director relating to an examination mark shall be reversed and no such mark changed unless the commission finds that it was through error, fraud, mistake or in bad faith, and in each case of reversal of such decision or change in marking the specific reasons therefor shall be stated in the records of the proceedings of the commission."

The petitioner contends that the commission had no right to set the examination aside without affording him notice

---

[1] That this was the view of the special commissions is made clear by the following excerpts from their reports. "The . . . [commission has], in so far as possible, been removed from participation in administrative matters, and the newly created Director of Civil Service has been made the executive and administrative head of the Division by the [proposed] legislation . . . . It appears obvious that the technical character of the work calls for an administrative head with considerable training and experience in the field of personnel administration." House No. 1716, page 13.

"The Commission should be relieved of all technical and administrative matters. The only instances in which the Commission should function are in its participation in the adoption of rules, and hearing and deciding all appeals." House No. 1722, page 11.

"The preparation and marking of examination tests is technical in character, and should be entrusted exclusively to a qualified staff." House No. 1722, page 14.

and an opportunity to be heard. That the decision of the commission adversely affected the rights of the petitioner so as to enable him to invoke the remedy of certiorari may be conceded. *McNamara* v. *Director of Civil Service*, 330 Mass. 22, 25. But it does not follow that the petitioner was entitled to notice and hearing before the commission. Many examinations would involve a large number of applicants. In such cases it would be cumbersome and impractical to require the commission to give notice and an opportunity to be heard to all parties whose rights might in some way, however slight, be affected by its decision, although the commission might afford a hearing to such parties if it saw fit to do so. See *Hayes* v. *Hurley*, 292 Mass. 109, 110–112. Where, as here, there is no provision in the statute for notice and hearing with respect to persons in the petitioner's situation we are not disposed to read one in. The rights of all parties and of the public are entrusted to the commission which has the solemn and important duty of administering the law faithfully and impartially. If the commission does not comply with the law, one whose rights have been adversely affected is not without a remedy. The petitioner, however, does not make out a case by alleging that the commission did not give him notice and an opportunity to be heard. What has been said, of course, does not apply to "a person aggrieved" who appeals from a decision or action of, or failure to act by, the director. In such a case the commission is commanded to "[h]ear and decide." § 2 (b).

The petition is vague as to the grounds on which the other competitors challenged the examination. We are told only that after the grades had been recorded by the director "some or all of the other competitors, claiming to be aggrieved, appealed to the director . . . who, after hearing, denied their appeal and refused to set aside the results of the examination." Conceivably they were challenging the examination in its entirety, or, as is more likely, they were exercising their rights under G. L. (Ter. Ed.) c. 31, § 12A, as appearing in St. 1948, c. 297, and asking to have

their markings reviewed.[1]  If the former, we cannot say that the commission could not, in appropriate cases, set aside an examination.[2]  In such cases, however, the commission must set forth in its records the specific reasons for its action.  If the appeal here was of that sort we cannot say on the basis of the petition that the commission exceeded its authority.  The commission may have had good grounds for setting aside the examination.  The reason given to the petitioner that the examination was set aside "in view of the evidence presented to . . . [it]," of course, would not have satisfied the statutory requirement that "the specific reasons therefor shall be stated in the records of the proceedings"; something much more definite than that is required.  But for aught that appears adequate reasons may have been stated in the records.  No intendment in favor of the pleader can be made upon a demurrer. *Comerford* v. *Meier*, 302 Mass. 398, 402.  On this interpretation of the petition we are of opinion that the demurrer ought to have been sustained.

But, as we have indicated, the other competitors may have sought only to have their markings reviewed by the director.  On this interpretation of the petition the demurrer should likewise be sustained.  It is true that under § 2 (b) no decision of the director relating to an examination mark may be reversed unless the commission finds that it was "through error, fraud, mistake or in bad faith," and in such a case the specific reasons must be stated in records of the proceedings.  This limitation on the powers of the commission touching examination marks could not be evaded by the simple device of setting the examination aside. Where that course is adopted by the commission in cases of

---

[1] Section 12A provides that within fourteen days after notice is given of the results of an examination an applicant may file with the director a request for a review of the markings on his examination paper, and within fourteen days after notice of the director's decision is given such applicant may appeal to the commission.

[2] If, for example, the commission was satisfied that prior to an examination the examination paper had been stolen or that its contents had been revealed by a disloyal employee in the division, it would plainly be justified in setting the examination aside.

appeals from decisions relating to examination marks there must be a finding of error, fraud, mistake or bad faith. But from the petition we do not know that the commission adopted that course, or, if it did, that it did not make such a finding. The missing allegation cannot be supplied by inference. *Sher* v. *Perlman,* 324 Mass. 390, 392.

Possibly the petitioner has a case but if so he has failed to plead it in such a way as to be good on demurrer. Perhaps the defects are such as can be cured by amendment, but the allowance of such an amendment is a matter to be left to the discretion of the court below.

The interlocutory order overruling the demurrer is reversed and an order sustaining the demurrer is to be entered.

*So ordered.*