WILLIAM ASH vs. POLICE COMMISSIONER OF BOSTON
& another.[1]

Suffolk.   December 11, 1980. — April 3, 1981.

Present: ARMSTRONG, GREANEY, & DREBEN, JJ.

*Civil Service,* Testing.  *Administrative Law,* Exhaustion of remedies.

It was within the authority of the Personnel Administrator of the Division
of Personnel Administration to round off civil service test scores to the
nearest whole number to determine the pool of certified applicants
from which appointments could be made. [651-653]
A police patrolman's claim that he was denied a promotion on account of
his union activities was properly dismissed for failure to pursue the ad-
ministrative remedies provided by G. L. c. 150E, § 11. [653-654]

CIVIL ACTION commenced in the Superior Court on Sep-
tember 19, 1977.

The case was heard by *Irwin,* J., on two counts of the
complaint and a motion to dismiss the remaining count was
heard by *Donohue,* J.

*Frank J. McGee* for the plaintiff.

*Betty E. Waxman,* Assistant Attorney General, for Per-
sonnel Administrator of the Division of Personnel Adminis-
tration.

*Mary McAuliffe* for Police Commissioner of Boston.

DREBEN, J.  The plaintiff, a Boston police patrolman,
took the civil service examination for promotion to police
sergeant in November, 1974.  Failing to achieve promotion,
he brought an action in the Superior Court challenging the
authority of the defendant Personnel Administrator to
round off test scores to the nearest whole number.  This
method resulted in tie scores and increased the pool of certi-

_____

[1] Personnel Administrator of the Division of Personnel Administration.

fied applicants from which appointments could be made.[2] In his complaint, the plaintiff also asserted an independent claim of discrimination for his union activities against another defendant, the police commissioner of Boston. A Superior Court judge upheld the method of scoring. After an appeal to this court was dismissed as premature, a second Superior Court judge dismissed the action against the police commissioner because the plaintiff had failed to pursue his administrative remedy under G. L. c. 150E, §§ 10(a)(3) and 11, before seeking judicial relief. We affirm the judgment dismissing the plaintiff's action.

1. *Scoring.* The examination was in three parts, each scored separately. The scoring system was sophisticated. It included procedures such as weighting of examination components, conversion of raw scores to standard scores (using a standard statistical formula), standardization of grades assigned to different examination panels to eliminate grading disparity among panels, averaging to reflect weighting, rounding off, and translation of scores to conventional scoring scales. The rounding off process reflects the view of some psychometric authorities[3] that fractional

---

[2] We assume without deciding that the plaintiff has demonstrated harm by the challenged method. We also do not consider whether the plaintiff had an administrative method of challenging the Personnel Administrator's action. We note that in his supplementary answer, the Personnel Administrator acknowledged that "pursuant to G. L. c. 31, §§ 2A(l) and 12A [he] refuses to review the rounding off process employed in the grading of promotional examinations for the position of sergeant of the Boston police Department." We also note that G. L. c. 31, § 2(b), as appearing in St. 1973, c. 320, § 1, the statute in effect at the time the plaintiff took his examination, provided for appeals to the Civil Service Commission "except in matters relating to findings of the director relative to the grading of written, oral or practical tests in a competitive examination . . . ."

[3] The defendant Personnel Administrator included in his brief material of testing and personnel selection authorities. This material was presented to the trial judge, and counsel for the plaintiff was asked at oral argument whether he had any objection to its consideration by the panel. He indicated that he had no objection to its use. Among other matters included were the following: excerpts from Anastasi, Psychological Testing (4th ed. 1968); French, Bureau of Selection, Michigan Dept. of Civil

differences in test scores are insignificant and are more a product of chance than of test validity.

The Personnel Administrator is the skilled professional authorized by G. L. c. 31[4] to decide technical matters such as the scoring and interpretation of examinations. See *Moore* v. *Civil Serv. Commn.*, 333 Mass. 430, 434 n.1 (1956), quoting from 1938 House Doc. No. 1716, at 13, "It appears obvious that the technical character of the work calls for an administrative head with considerable training and experience in the field of personnel administration"; and from 1939 House Doc. No. 1722, at 14, "The preparation and marking of examination tests is technical in character, and should be entrusted exclusively to a qualified staff." See also *DiRado* v. *Civil Serv. Commn.*, 352 Mass. 130, 134 (1967).

There is here no showing that the Administrator exceeded his authority. We fully agree with the conclusions of the Superior Court judge, who stated:

> "[T]he statutory scheme contemplates that the Administrator have discretion in determining the method of numerically grading a promotional examination . . .

---

Service, The Rule of Test Reliability: Evaluation of a Certification Method (1975); Saso & Tanis, Selection and Certification of Eligibles, Personnel Report No. 743, International Personnel Management Assn. (1974).

[4] The applicable statute is G. L. c. 31 as in effect prior to the enactment of St. 1978, c. 393, § 11. Statute 1978, c. 393, § 44, provides that the 1978 act shall not affect any certification of names or other action taken pursuant to the earlier law. Section 10 of G. L. c. 31, as amended by St. 1969, c. 6, read, in part, as follows:

> "Examinations shall be conducted under the direction of the [Personnel Administrator], who shall determine the form, method and subject matter thereof; provided that they shall relate to matters which will fairly test the fitness of the applicants actually to perform the duties of the positions for which they apply . . . The [personnel administrator] shall determine the scope, weight and passing requirements of examinations . . .."

See also § 2(b) as cited in note 2, *supra.*

There is no indication that the statute is intended to lock the Administrator into grading each examination to the second or third decimal place.

"In exercising this discretion with respect to the evaluation and marking of examinations, the Administrator is not precluded from availing himself of modern testing techniques consistent with the underlying objective of competitive merit selection. *Kelly* v. *Civil Serv. Commn.*, [37 N.J. 450, 456-457 (1962)], and his determination will be upheld unless clearly shown to be arbitrary or unreasonable. [Citations omitted.] The decision by the Administrator in this case to round off grades to the nearest whole number is supported by the conclusion of certain testing authorities that decimal variations in grading civil service examinations are not meaningful in distinguishing among applicants. [Authorities omitted.] The Administrator's decision need not be based on conclusive testing principles; it need only be founded on a reasonable basis. Thus, the Administrator's action in this case cannot be deemed 'arbitrary or devoid of logic and reason'. *Sharkey* v. *Civil Serv. Commn.*, 357 Mass. 785 [1970]."

2. *Administrative remedy.* It is a prohibited practice to "[d]iscriminate in regard to hiring, tenure, or any term or condition of employment to encourage or discourage membership in any employee organization." G. L. c. 150E, § 10(a)(3), as inserted by St. 1973, c. 1078, § 2. When an employer engages in such a practice, G. L. c. 150E, § 11, provides an administrative remedy before the Labor Relations Commission. The plaintiff has not shown any facts which relieve him "of the requirement that a plaintiff must pursue the opportunities available for administrative relief before seeking relief from the court." *East Chop Tennis Club* v. *Massachusetts Commn. Against Discrimination,*

364, Mass. 444, 453 (1973). We note that a similar complaint was recently heard by the Labor Relations Commission. *City of Malden & William Kerr,* 5 M.L.C. 1752 (1979).

*Judgment affirmed.*