

I N  T H E

# Court of Appeals of Indiana

Theodore Rokita,

*Appellant/Cross-Appellee-Defendant*

v.

Barbara Tully,

*Appellee/Cross-Appellant-Plaintiff*

April 29, 2024

Court of Appeals Case No.
23A-PL-705

Appeal from the Marion Superior Court

The Honorable Kurt Eisgruber, Judge

Trial Court Cause No.
49D06-2107-PL-25333

**Opinion by Judge Kenworthy**
Chief Judge Altice and Judge Foley concur.

FILED

Apr 29 2024, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

**Kenworthy, Judge.**

## Case Summary

[1] Barabara Tully requested information from the Office of the Indiana Attorney General ("OAG") regarding an informal advisory opinion issued to Attorney General Theodore Rokita by the Indiana Office of Inspector General ("OIG"). The OAG declined to give Tully access, claiming the opinion was confidential and not subject to disclosure under Indiana's Access to Public Records Act ("APRA"). After the Indiana Public Access Counselor ("PAC") also concluded the opinion was excepted from disclosure, Tully sued Attorney General Rokita, alleging a violation of APRA. The trial court granted Tully summary judgment and Attorney General Rokita appealed.

[2] But while this appeal was pending, the Indiana General Assembly added a wrinkle: it amended the statute relating to the Inspector General's duties and made that amendment retroactive. The amended statute explicitly provides the Inspector General's informal advisory opinions are confidential and excepted from disclosure under APRA. Based on this turn of events, we reverse and remand with instructions.

## Facts and Procedural History

### A. Indiana Office of Inspector General

[3] Created in 2005, the OIG is tasked with "addressing fraud, waste, abuse, and wrongdoing" in state agencies. Ind. Code § 4-2-7-2(b). To help achieve this goal, the General Assembly directed the OIG to implement a code of ethics for

state government through rulemaking. *See* I.C. §§ 4-2-7-3(6), 4-2-7-5(a). The OIG did so by establishing the Indiana Code of Ethics. *See* 42 Ind. Admin. Code 1-1-1 *et seq*. Relevant to this appeal are Rules 5 and 8 of that Code. 42 I.A.C. 1-5-1 *et. seq* ("Rule 5"); 42 I.A.C. 1-8-1 ("Rule 8"). Rule 5 sets forth the Ethics Rules, one of which specifically concerns outside-employment restrictions for state employees. *See* 42 I.A.C. 1-5-5. Rule 8 grants the Inspector General, or its designee, the "authority to render informal advisory opinions." 42 I.A.C. 1-8-1(a). Such opinions are "expressions of opinion that are communicated for the purpose of deliberation and decision making" that "shall be considered confidential under IC 5-14-3-4(b)(6)." 42 I.A.C. 1-8-1(b). Through Rule 8's process, the OIG issues around 215 to 375 informal advisory opinions per year to Indiana state employees seeking prospective ethical advice. *See Appellant's App. Vol. 2* at 161.

## B. Indiana Access to Public Records Act

[4] In 1983, the Indiana General Assembly passed APRA[1] with the express purpose that "all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees." I.C. § 5-14-3-1. To serve this purpose, APRA provides: "Any person may inspect and copy the public records of any agency during the regular business hours of the agency." I.C. § 5-14-3-3(a). And

---

[1] *See* I.C. §§ 5-14-3-1 through 5-14-3-10.

because APRA is intended to ensure Hoosiers have broad access to most government records, APRA is to be "liberally construed," and places the burden for nondisclosure of a public record "on the public agency that would deny access to the record and not on the person seeking to inspect and copy the record." I.C. § 5-14-3-1.

[5] However, certain categories of public records are excepted from APRA's disclosure requirement. *See* I.C. § 5-14-3-4. Some records are excepted unless disclosure is specifically required by statute or court order, I.C. § 5-14-3-4(a), while others are excepted at the discretion of a public agency, I.C. § 5-14-3-4(b). A member of the public or a public agency can make an informal inquiry or request a formal advisory opinion from the PAC regarding whether a document is subject to disclosure under APRA. *See* I.C. § 5-14-4-10(5), (6).

[6] But an opinion from the PAC does not have to be the end of the road. Rather, a person denied access to a public record may file an action in court "to compel the public agency to permit the person to inspect and copy the public record." I.C. § 5-14-3-9(e). If the plaintiff seeking disclosure prevails in the court action, the court "shall" award reasonable attorney fees, court costs, and expenses if the plaintiff first sought and received an informal inquiry response or formal advisory opinion from the PAC.[2] I.C. § 5-14-3-9(i).

---

[2] Due to this incentive, most cases involving APRA begin as complaints with the PAC. *See, e.g., ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192 (Ind. 2016); *Citizens Action Coal. of Ind. v. Koch*, 51 N.E.3d 236

## C. Tully's APRA Request and Subsequent History

[7] Soon after Attorney General Rokita assumed office in January 2021, he sought and received an informal advisory opinion from the OIG relating to the ethical implications of his continued outside employment with Apex Benefits. A few weeks later, the *Indianapolis Business Journal* ran an article about the OIG opinion. In the article, a spokesperson for the OAG confirmed Attorney General Rokita had sought and received an opinion from the OIG and assured the opinion clarified Attorney General Rokita's "interests and outside employment are all squarely within the boundaries of the law and do not conflict with his official duties." *Appellant's App. Vol. 2* at 51.

[8] Tully then submitted a written public records request to Attorney General Rokita seeking access to the OIG opinion. When the OAG refused to provide her with a copy, claiming the OIG opinion was confidential under Rule 8, Tully turned to the PAC. And after the PAC agreed with the OAG that the opinion was confidential under Rule 8 and not subject to disclosure under APRA, Tully sued Attorney General Rokita.

[9] In the trial court, both parties moved for summary judgment. According to Attorney General Rokita, the deliberative materials exception to disclosure specifically referenced in Rule 8 excepted the OIG opinion he received from disclosure. *See* I.C. § 5-14-3-4(b)(6). The trial court disagreed and granted Tully

---

(Ind. 2016); *see also* Courtney Abshire, *Public Business is the Public's Business: Koch's Implications for Indiana's Access to Public Records Act*, 52 Ind. L. Rev. 455, 458 (2019).

summary judgment, finding Rule 8 "is not harmonious" with Rule 5. *Appellant's App. Vol. 2* at 14. In the trial court's view, accepting Attorney General Rokita's reasoning "would allow a state employee to determine whether to request an informal advisory opinion under Rule 8, or be subject to a more public review by the [Ethics] Commission subject to APRA." *Id.* at 15. The trial court reasoned "[s]uch a work around would allow the [OIG] to promulgate rules which clearly exceed the [OIG's] statutory authority" and "circumvent the purpose of the [Code of Ethics] Rules." *Id.*

[10] After ruling in Tully's favor, the trial court invited Attorney General Rokita to present a redacted copy of the OIG opinion, which was to be issued to Tully.[3] Rather than redact, Attorney General Rokita appealed.[4]

[11] Ordinarily, the facts would end there. Here, though, the Indiana General Assembly amended Indiana Code Section 4-2-7-3 effective July 1, 2023—*i.e.*, while this appeal was pending.[5] The amendment inserted a new subsection relating to the Inspector General's duties:

> The inspector general shall . . . [p]rovide informal advisory opinions to current, former, and prospective state employees, state officers, and special state appointees. An informal advisory opinion issued by the office of the inspector general is

---

[3] The trial court stayed the execution of judgment until fifteen days after the resolution of any appeal.

[4] Tully cross-appealed, claiming the trial court erred by not awarding her attorney's fees and by allowing Attorney General Rokita to redact the OIG opinion "without limitation." *Appellee/Cross-Appellant's Br.* at 37.

[5] Attorney General Rokita filed his Notice of Appeal on March 29, 2023. Neither party filed an appellate brief in this case prior to July 20, 2023.

confidential under IC 5-14-3-4, including any previously issued informal advisory opinion by the office of the inspector general that recites that it is confidential.

I.C. § 4-2-7-3(9) (2023) ("Subsection 9").[6] Thus, Subsection 9 changed the playing field by purporting to resolve any dispute over the scope of the OIG's authority to grant confidential informal advisory opinions; Subsection 9 says the OIG may do so.

[12] Because of this change, the parties' arguments on appeal differ from those presented below. On appeal, Attorney General Rokita claims we should apply Subsection 9, which "completely resolves" this appeal in his favor. *Appellant's Br.* at 16. Tully counters, arguing applying Subsection 9 to this case violates Article 3, Section 1 and Article 4, Section 19 of the Indiana Constitution. Additionally, Tully contends even if the OIG opinion is confidential, Attorney General Rokita waived confidentiality through the OAG spokesperson's comment to the *Indianapolis Business Journal* regarding the OIG opinion. Ultimately, the parties agree there are no issues of material fact, and this appeal turns solely on questions of law.

## Standards of Review

[13] We review summary-judgment decisions *de novo*, applying the same standard as the trial court. *Miller v. Patel*, 212 N.E.3d 639, 644 (Ind. 2023). Summary

---

[6] *Compare* I.C. § 4-2-7-3 (2019), *with* I.C. § 4-2-7-3 (2023) (adding duty to issue confidential informal advisory opinions).

judgment is appropriate only when "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). Parties filing cross-motions for summary judgment "neither alters this standard nor changes our analysis—'we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law.'" *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Est. of Harris by Harris*, 99 N.E.3d 625, 629 (Ind. 2018) (quoting *SCI Propane, LLC v. Frederick*, 39 N.E.3d 675, 677 (Ind. 2015)). Summary judgment "is a desirable tool to allow the trial court to dispose of cases where only legal issues exist." *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (quoting *Clipp v. Weaver*, 451 N.E.2d 1092, 1093 (Ind. 1983)).

[14] We also review pure questions of law *de novo*, including statutory and constitutional claims.[7] *Morales v. Rust*, 228 N.E.3d 1025, 1033 (Ind. 2024).

---

[7] The "longstanding principle of constitutional avoidance . . . weighs against deciding constitutional questions not absolutely necessary to a merits disposition." *Teising v. State*, 226 N.E.3d 780, 783 (Ind. 2024) (quoting *Ind. Land Tr. Co. v. XL Inv. Props. LLC*, 155 N.E.3d 1177, 1182 (Ind. 2020)). As a result, our Supreme Court has "repeatedly refused to adjudicate constitutional questions when presented with other dispositive issues." *State v. Katz*, 179 N.E.3d 431, 441 (Ind. 2022) (internal quotation omitted); *see also Bayh v. Sonnenburg*, 573 N.E.2d 398, 402 (Ind. 1991) ("[C]onstitutional issues are to be avoided as long as there are potentially dispositive statutory or common law issues still alive."), *cert. denied*. Put simply, non-constitutional claims come first, constitutional claims come last. *See Sonnenburg*, 573 N.E.2d at 402. As discussed, Subsection 9 eliminated potential non-constitutional grounds on which this case might have been decided—whether the OIG exceeded its authority by issuing confidential informal advisory opinions under Rule 8 and whether the OIG opinion is confidential under the deliberative materials exception in APRA (Indiana Code Section 5-14-3-4(b)(6)). Thus, we turn to what remains. In adhering to our Supreme Court's directive, we first address whether Attorney General Rokita waived any potential claim to confidentiality before turning to whether Subsection 9 survives Tully's constitutional challenges. In this sense, we resolve

# 1. Attorney General Rokita Did Not Waive Confidentiality

First, we address Tully's remaining non-constitutional claim. According to Tully, even if the OIG informal advisory opinion is confidential, Attorney General Rokita waived confidentiality when a spokesperson for the OAG disclosed the opinion's "essential conclusions to the public[.]" *Appellee/Cross-Appellant's Br.* at 21.

Waiver is the voluntary and intentional relinquishment of a known right, claim, or privilege. *Ashby v. Bar Plan Mut. Ins.,* 949 N.E.2d 307, 312 (Ind. 2011). Although APRA contains no waiver provision, a public agency can waive the exceptions to public disclosure. *See Unincorporated Operating Div. of Ind. Newspapers, Inc. v. Trs. of Ind. Univ.*, 787 N.E.2d 893, 918–19 (Ind. Ct. App. 2003), *trans. denied*.

In *Indiana Newspapers*, the *Indianapolis Star* sought access to materials held by the trustees of Indiana University. The *Star* requested records—under APRA—relating to Indiana University's investigation into then-head basketball coach Bob Knight's alleged inappropriate behavior, including choking basketball player Neil Reed during practice. *Id.* at 898. The *Star* claimed it was entitled to the records because, among other reasons, the trustees waived all applicable

Tully's constitutional claims only after exhausting any potential dispositive statutory or common law issues—*i.e.,* as a last resort.

APRA exceptions by selectively disclosing materials relating to the investigation. *Id.* at 916.

[18] A panel of this Court disagreed with the *Star*, holding disclosure of a three-page report containing a "very generalized overview with very little specific information concerning the underlying investigatory materials and without the quotation of extensive and integral portions" of the investigatory materials was not "the sort of release of otherwise non-discloseable [sic] information sufficient to warrant waiver of any of the APRA exceptions." *Id.* at 919–20. Although not essential to its conclusion, the court also envisioned a situation in which a state agency might relinquish protections afforded by APRA's exceptions if "an agency allowed one party access to materials and then in turn denied another party access to the same materials based upon an exception to APRA[.]" *Id.* at 919. After all, if an agency "has already disclosed the allegedly non-discloseable [sic] materials, the purpose of the APRA exceptions will have already been compromised." *Id.*

[19] In this case, the OAG spokesperson's statement confirming Attorney General Rokita had sought and received an OIG opinion and assuring the opinion clarified Attorney General Rokita's "interests and outside employment are all squarely within the boundaries of the law and do no conflict with his official duties" is like the "very generalized overview with very little specific information" deemed insufficient to constitute waiver in *Indiana Newspapers*. *Appellant's App. Vol. 2* at 51; *Ind. Newspapers*, 787 N.E.2d at 919. Rather than divulge the specifics of the opinion, the OAG spokesperson's comment

conveyed the opinion's general conclusion, but nothing more.  Under these circumstances, we cannot say the spokesperson's statement was disclosure sufficient to waive the protections of APRA's exceptions.  Nor does this case present the type of selective disclosure waiver hypothesized in *Indiana Newspapers*.  Neither the OAG nor Attorney General Rokita allowed one party access and then denied access to another party.  So, although a party may waive APRA's exceptions to disclosure, Attorney General Rokita has not done so here.[8]

## 2. Indiana Code Section 4-2-7-3(9) Is Expressly Retroactive and Applies Here

[20] "Generally, a statute applies prospectively unless it expressly states otherwise." *Guzzo v. Town of St. John*, 131 N.E.2d 179, 180 (Ind. 2019).  There is no general prohibition on applying retroactive laws to cases pending on appeal.  *See, e.g., Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 226 (1995) ("When a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly.").  Courts must generally

---

[8] In the alternative, Tully claims Attorney General Rokita is equitably estopped from asserting confidentiality regarding the OIG opinion following the OAG spokesperson's comment.  In substance, however, Tully's argument boils down to Attorney General Rokita should not be able to wield confidentiality "offensively rather than defensively." *Appellee/Cross-Appellant's Br.* at 24 (citing *Purdue Univ. v. Wartell*, 5 N.E.3d 797, 807 (Ind. Ct. App. 2014)).  Interpreted either way, Tully's claim does not prevail.  "Under Indiana law, equitable estoppel can be applied only if three elements are shown: lack of knowledge, reliance, and prejudicial effect." *Doe v. Carmel Operator, LLC*, 160 N.E.3d 518, 520 (Ind. 2021).  Tully has not argued, let alone shown, how she has satisfied these elements.  Further, we do not view Attorney General Rokita's assertion of confidentiality as the type of offensive privilege invocation warned against in *Wartell's* dicta.

honor the legislature's choice to make a law retroactive unless doing so would violate a vested right or constitutional guarantee. *Bourbon Mini-Mart, Inc. v. Gast Fuel & Servs., Inc.*, 783 N.E.2d 253, 260 (Ind. 2003) ("Ultimately . . . whether or not a statute applies retroactively depends on the Legislature's intent.")

Our first task when interpreting words in a statute is to assign them their plain meaning. *Rust*, 228 N.E.3d at 1054. "If we neglected this elemental task, 'we would be rewriting' unambiguous language, and therefore disrupting our 'separation-of-powers because it is the legislature that writes and revises statutes while [courts] merely interpret and apply them.'" *Id.* (quoting *Ind. Right to Life Victory Fund v. Morales*, 217 N.E.3d 517, 524 (Ind. 2023)).

The language of Subsection 9 plainly states it applies to "any previously issued informal advisory opinion by the office of the inspector general that recites that it is confidential." I.C. § 4-2-7-3(9). An enacted statute's language is the best evidence of legislative intent. *See Holcomb v. Bray*, 187 N.E.3d 1268, 1285 (Ind. 2022). And we must honor the legislature's intent for Subsection 9 to apply retroactively, so long as doing so does not violate a vested right or constitutional guarantee owed to Tully. *See Bourbon*, 783 N.E.2d at 260.

## 3. Indiana Code Section 4-2-7-3(9) Is Not Unconstitutional

Tully asserts applying Section 9 retroactively to this case would violate two provisions of the Indiana Constitution: Article 3, Section 1 (distribution of

powers); and Article 4, Section 19 (single-subject requirement).[9]  When faced with a question under Indiana's Constitution, we must examine "the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our Constitution, and case law interpreting the specific provisions."  *Holcomb*, 187 N.E.3d at 1277 (quoting *Hoagland v. Franklin Twp. Cmty. Sch. Corp.*, 27 N.E.3d 737, 741 (Ind. 2015)).  We treat the language in each provision with "deference, as though every word had been hammered into place."  *Id.* (quoting *Meredith v. Pence*, 984 N.E.2d 1213, 1218 (Ind. 2013)).  Ultimately, the challenger bears a high burden because all laws come to us "cloaked with 'the presumption of constitutionality until clearly overcome by a contrary showing.'"  *Rust*, 228 N.E.3d at 1033 (quoting *Horner v. Curry*, 125 N.E.3d 584, 588 (Ind. 2019)).

## A. No Violation of Article 3, Section 1

[24]  The Indiana Constitution vests the General Assembly with the "[l]egislative authority," of the State, Ind. Const. art. 4, § 1, and our state courts with the "judicial power," *id.* art. 7, § 1.  Although the Constitution of the United States "implicitly mandates" the separation of powers at the federal level, Indiana's

___

[9] Based on the timing of the legislature's amendment—prior to any briefing in this case—each party was given, and took advantage of, a full and fair opportunity to develop their claims regarding application of Subsection 9 to this case.  And given our standard of review—*de novo*—we owe no deference to the trial court's decision.  *See Rust*, 228 N.E.3d at 1033.  Additionally, there are no issues of fact for the trial court to resolve if we were to remand.  For these reasons we address the merits of the parties' claims even though the trial court has not specifically weighed in on the issue.  *Cf., Guzzo*, 131 N.E.3d at 180 (remanding in light of intervening, retroactively applicable amendment to pertinent statute in order for the trial court to, in part, make a factual determination).

constitution—and the constitutions of many other states—"clearly and explicitly command[s] that each branch of state government respect the constitutional boundaries of the coordinate branches." *Berry v. Crawford*, 990 N.E.2d 410, 415 (Ind. 2013); Ind. Const. art. 3, § 1 (prohibiting each branch from "exercise[ing] any of the functions of another, except as in this Constitution expressly provided").[10] The doctrine of separation of powers "is the keystone of our form of government" and "recognizes that each branch of the government has specific duties and powers that may not be usurped or infringed upon by the other branches of government." *State v. Doe*, 987 N.E.2d 1066, 1072 (Ind. 2013) (quotations omitted).

[25] As our Supreme Court has made clear, federal separation of powers decisions do not determine the distribution of powers under Article 3 of the Indiana Constitution. *Sonnenburg*, 573 N.E.2d at 404; *see also Katz*, 179 N.E.3d at 445 (explaining interpretation of an Indiana Constitutional provision is "an independent judicial act" from a similar analysis under the Federal Constitution). That said, decisions from federal courts may "nonetheless [be] persuasive," although we stop short of granting them deference or precedential status. *Katz*, 179 N.E.3d at 445 (quoting *City of Indianapolis v. Wright*, 371 N.E.2d 1298, 1300 (Ind. 1978)). And when interpreting Article 3, Section 1,

---

[10] In full, Article 3, Section 1 of the Indiana Constitution provides:

> The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial: and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided.

our Supreme Court has sometimes turned to "helpful" cases from other jurisdictions. *See, e.g.*, *Berry*, 990 N.E.2d at 415–16; *see also State v. Monfort*, 723 N.E.2d 407, 413 (Ind. 2000) (noting the central principles of separation of powers underlying the thinking of the framers of the Federal Constitution were shared by the framers of the Indiana Constitution).

Tully contends retroactively applying Subsection 9 to this case violates Article 3, Section 1 of Indiana's Constitution. According to Tully, the legislature "does not have authority to retrospectively void a final court judgment[.]" *Appellee/Cross-Appellant's Br.* at 30. Thus, she believes the legislature "usurped judicial powers and prerogatives" by invalidating her "vested interest in [the trial court's] final judgment." *Id.*

In one respect, Tully is correct: the legislature cannot, consistent with the doctrine of separation of powers, set aside a final judgment of a court.[11] *Lemmon v. Harris*, 949 N.E.2d 803, 814 (Ind. 2011) (describing this principle as "well-settled"). That said, the crux of Tully's claim is based on a misinterpretation of "final judgment," as used in this context. Important here, there is "a distinction between judgments from which all appeals have been forgone or completed, and judgments that remain on appeal (or subject to being appealed)[.]" *Plaut*, 514 U.S. at 227.

---

[11] As used here, "final judgment" does not have the same meaning as in Indiana's Rules of Appellate Procedure. *See* Ind. Appellate Rule 2(H); *see also DeCola v. Norfolk S. Corp.*, 222 N.E.3d 938, 939 (Ind. 2023).

[28]     Article 7, Section 1 of the Indiana Constitution vests the "judicial power of the State" in "one Supreme Court, one Court of Appeals, Circuit Courts, and such other courts as the General Assembly may establish."[12]  In much the same way Article III of the United States Constitution creates a "judicial *department* composed of 'inferior Courts' and 'one supreme Court'" and "not a batch of unconnected courts," so too does Indiana's Constitution.  *Plaut*, 514 U.S. at 227.  The Indiana Supreme Court sits atop Indiana's court structure; it is the Hoosier-state's court of last resort.  One step below are intermediate appellate courts—including this Court.  And going down one step further are the trial courts.  All these courts are connected through Indiana's greater judicial structure.

[29]     Within Indiana's hierarchy of courts, the decision of a trial court is not—unless the time for appeal has expired—the final word of our judicial department as a whole.  Rather, the obligation of expounding the department's final word lies with the last court in the hierarchy to rule on the case.  And in so doing, the court must give effect to the legislature's latest enactment, even when that has the effect of overturning a judgment of a lower court.  *See, e.g., Columbus, C. & I. Co. v. Bd. of Comm'rs of Grant Cnty.*, 65 Ind. 427, 442 (1878) (noting courts "do not question the power of the Legislature to enact general laws, regulating the practice in courts of justice, which may materially affect or change the decision

---

[12] In 1881, the word "other" in Article 7, Section 1 replaced the word "inferior."  *See Ex parte France*, 95 N.E. 515, 518 (Ind. 1911).

of causes pending before the courts"); *see also Plaut*, 514 U.S. at 227. Once a decision reaches finality—meaning no further appeal may be taken—it becomes the last word of the judicial department regarding that case. At this point, the legislature cannot "declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was." *Plaut*, 514 U.S. at 227; *see also Thorpe v. King*, 227 N.E.2d 169, 170–71 (Ind. 1967).

[30]   The cases Tully cites support the principle she recounts, but not her definition of "final judgment."[13]  For example, in *Thorpe*, the Board of County Commissioners of Lake County passed an ordinance to incorporate the purported Town of Cedar Lake. 227 N.E.2d at 170. The Lake Superior Court declared the ordinance void. *Id.* The time to appeal the court's decision then expired. *Id.* Just under two months later, the General Assembly sought to legalize the purported incorporation of the Town of Cedar Lake by declaring the acts taken to incorporate the town "sufficient." *Id.* Our Supreme Court declared the General Assembly's act was "unconstitutional and ineffective" because it would have "the legal effect of setting aside and nullifying a final decree of the Lake Superior Court." *Id.* The Court recognized to "hold otherwise might be construed that this Court recognizes the right of the

---

[13] Tully also relies on *Toomey v. Ind. Dep't of Correction*, 49C01-1501-PL-3142 (Marion Cnty. Cir. Ct. Nov. 29, 2018). On appeal in the Indiana Supreme Court, the trial court's order ruling against the Department of Correction for multiple reasons was affirmed pursuant to Indiana Appellate Rule 59(B). *Ind. Dep't of Correction v. Toomey*, 162 N.E.3d 1099 (Mem) (Ind. 2021); *see also* App. R. 59(B) ("When the Supreme Court Justices participating are evenly divided in such an appeal, the trial court judgment shall be affirmed."). Therefore, it is challenging to glean helpful guidance from *Toomey's* outcome.

legislative branch of government to encroach upon the judicial branch of government," thereby violating Article 3, Section 1. *Id*; *see also Horner*, 125 N.E.3d at 589 n.4 (recognizing *Thorpe* held the legislature cannot set aside final judgment of a court).

[31] But *Thorpe* is notably different from this case. The trial court's judgment in *Thorpe* was "final" because the time for appeal had expired. Here, not so; Attorney General Rokita timely appealed. If we were to accept Tully's position that the legislature divested her of a final judgment, we would be creating a rule which prohibits the legislature from ever applying laws retroactively to pending appeals in which a trial-court order has been entered. This rule would conflict with the federal rule, *see Plaut*, 514 U.S. at 216, and might result in our state's judiciary infringing upon the legislature's province to write and revise the law, *see* Ind. Const. art. 4, § 1; *see also Berry*, 990 N.E.2d at 415 (cautioning "[c]ourts should be very careful not to invade the authority of the legislature . . . for if they overstep the authority which belongs to them, and assume that which pertains to the legislature, they violate the very constitution which they thereby seek to preserve and maintain") (quotation omitted). We therefore decline to fashion such a rule.

[32] In sum, it is "well-settled under the doctrine of separation of powers that the Legislature cannot interfere with the discharge of judicial duties or set aside a final judgment of a court." *Lemmon*, 949 N.E.2d at 814. In this context, a final judgment is one from which no further appeal can be had. Applying this principle here, we detect no violation of the separation of powers mandate of

Article 3, Section 1 because—for these purposes—the trial court's order granting Tully summary judgment was not a "final judgment." It could be— and, in fact, was—timely appealed.[14]

## B. No Violation of Article 4, Section 19

[33] Next, Tully claims applying Subsection 9 to this case violates Article 4, Section 19 of Indiana's Constitution:

> An act, except an act for the codification, revision or rearrangement of laws, shall be confined to one subject and matters properly connected therewith.

Ind. Const. art. 4, § 19.[15] The purpose of this provision is two-fold: (1) "to prevent surprise or fraud in the Legislature by means of a provision or provisions in a bill of which the title gave *no information* to persons who might be subject to the legislation under consideration" and (2) "to prevent a combination of *nonrelated* subjects in the same act." *Loparex*, 964 N.E.2d at 813 (quoting *State ex rel. Ind. Real Est. Comm'n v. Meier*, 190 N.E.2d 191, 193 (Ind. 1963)).

---

[14] At least in part, Tully's opposition to applying Subsection 9 to her case stems from alleged "gamesmanship" by Attorney General Rokita and the OAG surrounding the passage of the amendment. *Appellee/Cross-Appellant's Br.* at 34. These are not claims we can entertain. We look to the language of the statute itself and our venture stops there. *See e.g., N.G. v. State*, 148 N.E.3d 971, 976 (Ind. 2020) (Slaughter, J., dissenting) (explaining, as courts, we should not speculate about legislative motives, because "whatever those are—and often they are elusive—they are not the law").

[15] Since the ratification of Indiana's 1851 Constitution, the text of Article 4, Section 19 has been amended twice: in 1960 and again in 1974. *See Loparex, LLC v. MPI Release Techs., LLC*, 964 N.E.2d 806, 812–13 (Ind. 2012) (discussing the amendments).

[34] Thus, "if there is any reasonable basis for grouping together in one act various matters of the same nature, and the public cannot be deceived reasonably thereby, the act is valid." *Id.* (quoting *Stith Petroleum Co. v. Dep't of Audit & Control*, 5 N.E.2d 517, 521 (Ind. 1937)). In other words, we "indulge in a very liberal interpretation rather than a critical and strict construction calculated to defeat the act." *Dorch v. Lugar*, 266 N.E.2d 25, 31 (Ind. 1971), *abrogated on other grounds by Collins v. Day*, 644 N.E.2d 72 (Ind. 1994); *see also Dague v. Piper Aircraft Corp.*, 418 N.E.2d 207, 214 (Ind. 1981) (explaining our Supreme Court "has traditionally given broad interpretation to the one-subject requirement, and thereby allowed legislative combinations of matters which, at first blush, might appear quite diverse"); *but see A.B. v. State*, 949 N.E.2d 1204, 1227 (Ind. 2011) (Sullivan, J., concurring in part) (reminding "the General Assembly has been given substantial deference but not carte blanche").

[35] The 123rd General Assembly passed P.L. 201-2023, entitled "AN ACT to amend the Indiana Code concerning state and local administration and to make an appropriation." Subsection 9 was included in P.L. 201-2023. And, as mentioned, Subsection 9 clarified the Inspector General's duty to issue confidential informal advisory opinions. This provision has at least some rational connection to P.L. 201-2023's general purpose of efficient state administration and appropriation. *See, e.g., Ind. State Teachers Ass'n v. Bd. of Sch. Comm'rs of the City of Indianapolis*, 679 N.E.2d 933, 935–36 (Ind. Ct. App. 1997) (upholding legislation which restricted the collective bargaining rights of public-school teachers in Indianapolis as part of the state's budget bill even though the

connection was "tenuous at best"). In fact, the provisions of P.L. 201-2023 are no less unrelated than legislation combining the Products Liability Act with amendments to the Indiana Code for courts and court officers. *See Dague*, 418 N.E.2d at 213–15 (upholding constitutionality of such a combination). Therefore, grouping the amendment to Section 4-2-7-3 with the other provisions of P.L. 201-2023 seems reasonable, and we cannot say doing so violated Article 4, Section 19.

## C. Courts Do Not Set Public Policy, the Legislature Does

[36] The General Assembly made the policy decision that the OIG's duties should include issuing confidential informal advisory opinions and that previously issued opinions should also be confidential if the opinion says so. As our Supreme Court has reminded:

> The legislature's policy choices, so long as they are constitutional, are beyond our purview. We neither applaud the wisdom of such choices nor condemn their folly. We simply assess their legality. Once we determine they pass muster, our task concludes.

*KS&E Sports v. Runnels*, 72 N.E.3d 892, 907 (Ind. 2017). Put simply, the legislature makes the law and courts interpret the law as written. Ind. Const. art. 4, § 1; *Marbury v. Madison*, 1 Cranch 137, 177 (1803) (declaring it is "emphatically the province and duty of the judicial department to say what the law is"). Having interpreted the challenged statute, we conclude it falls within the legislature's broad discretion and does not run afoul of the Indiana Constitution. Therefore, we heed "our limited constitutional role" and leave

this policy decision to our coordinate department—the legislature. *Rust*, 228 N.E.3d at 1045; *see also* Ind. Const. art. 3, § 1.

## Conclusion

[37] Subsection 9 grants the OIG power to issue informal advisory opinions, such as the one requested and received by Attorney General Rokita. Subsection 9 also makes such opinions confidential under APRA's exceptions to disclosure, including on a retroactive basis. Having determined Subsection 9 survives Tully's constitutional challenges and Attorney General Rokita did not waive confidentiality, we reverse and remand with instructions that the trial court grant Attorney General Rokita's cross-motion for summary judgment.[16]

[38] Reversed and remanded.

Altice, C.J., and Foley, J., concur.

ATTORNEYS FOR APPELLANT

Theodore E. Rokita
Attorney General for Indiana

James Bopp, Jr.
Melena S. Siebert
The Bopp Law Firm, PC
Terre Haute, Indiana

---

[16] Based on this result, Tully has not "substantially prevail[ed]" such that she is statutorily entitled to attorney fees and court costs. *See* I.C. § 5-14-3-9(i). And because the OIG opinion issued to Attorney General Rokita is confidential and excepted from disclosure under APRA, we cannot say the trial court erred in allowing Attorney General Rokita to redact the OIG opinion.

ATTORNEYS FOR APPELLEE

William R. Groth
Daniel Bowman
Bowman & Vlink, LLC
Indianapolis, Indiana